IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| JOHN L. PURSER, | ) | |
| | ) | CIVIL ACTION NO. CV605-033 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES E. DONALDSON, | ) | |
| Commissioner; HUGH SMITH, | ) | |
| Warden, and VICTOR GUY, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently confined at Georgia State Prison ("GSP") in Reidsville, Georgia, has filed an action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement. Defendants have filed a Renewed Motion for Summary Judgment (Doc. No. 73), and Plaintiff has filed a Response (Doc. No. 81). For the following reasons, Defendants' Renewed Motion for Summary Judgment should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff's allegations against Defendant Guy, Engineer at GSP, Defendant Smith, Warden at GSP, and Defendant Donald, Commissioner of the Georgia Department of Corrections, are summarized as follows:

> Plaintiff alleges that Defendants have allowed him to be exposed to friable asbestos in prison dormitories at GSP. Plaintiff contends that friable asbestos exists in insulation on the pipes in hallways and in areas behind the ice machines in Buildings L and M where Plaintiff is housed. According to Plaintiff, continued maintenance on these areas by prison staff and tampering by inmates releases the asbestos and allows particles

to travel through the ventilation system and into the dorms and cells. Plaintiff alleges that prison officials were aware of the friable asbestos but failed to take appropriate action to remove or contain the asbestos, to transfer Plaintiff to asbestos-free housing, or to give Plaintiff medical treatment. Plaintiff contends that exposure to this friable asbestos has caused scarring and calcification of his lungs.

(Doc. No. 66, pp. 1-2).

Defendants previously moved for summary judgment, arguing that Plaintiff's deliberate indifference claim fails on the merits, that Defendants Guy and Smith are entitled to qualified immunity, and that Defendant Donald cannot be held liable in his supervisory capacity. (Doc. No. 53). The undersigned recommended that Defendants' motion be denied, and Defendants filed objections to that recommendation. (Doc. No. 68). The District Judge referred the matter back to the undersigned with leave to Defendants to renew their summary judgment motion so that this Court could "explore the alternative (no medical damages) disposition grounds" raised by Defendants in their Objections to the Report and Recommendation. (Doc. No. 70, pp. 5-6).

In their Renewed Motion for Summary Judgment, Defendants incorporate the arguments and evidence set forth by their initial motion for summary judgment. As previously summarized by this Court:

> Defendants generally allege that they were not deliberately indifferent to Plaintiff's serious medical needs. Defendants contend that the insulation material behind the ice machine is fiberglass, not asbestos. Defendants assert that, though there is asbestos present on pipe insulation, the exposure of that asbestos through maintenance work has been minimal and that airborne asbestos levels have not been dangerous in the area. Defendants also assert that the passageways in which asbestos has been found do not circulate air into the prison cells. Defendants allege that they have not been subjectively aware of any exposure to asbestos in large enough quantities to endanger human health. Additionally, Defendants Guy and Smith aver that they are protected by qualified immunity. Finally, Defendant Donald contends that he is not liable on the doctrine of respondeat superior.

(Doc. No. 66, p. 2). Additionally, Defendants now contend that Plaintiff fails to prove that he has a present serious injury or an increased risk of future injury so as to support the objective prong of his deliberate indifference claim. (Doc. No. 73, pp. 7-8). In his Response, Plaintiff addresses Defendants' new argument, contending that he has suffered a present injury and an increased risk of future serious injury.

## STANDARD OF DETERMINATION

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part[ies are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The moving parties bear the burden of establishing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v.

Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION TO AUTHORITY

### I. Merits of Plaintiff's Deliberate Indifference Claim

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. This duty to safeguard also embodies the principle expressed by the Court in Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed.2d 251 (1976), forbidding prison officials from demonstrating deliberate indifference to the serious medical needs of inmates. Like any deliberate indifference claim, the Estelle analysis incorporates both an objective and a subjective component. Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

#### A. Objective Component

The objective component of a deliberate indifference claim is "contextual and responsive to 'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992) (quoting Estelle, 429 U.S. at 103, 97 S. Ct. at 290). Under that standard, "deliberate indifference to medical needs amounts

to an Eighth Amendment violation only if those needs are 'serious'." Hill, 40 F.3d at 1186 (quoting Hudson, 503 U.S. at 9, 112 S. Ct. at 1000).

In Helling v. McKinney, 509 U.S. 25, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993), the Supreme Court held that the Eighth Amendment protects against *future* harm, finding on the particular facts of that case that an inmate stated a cause of action "by alleging that [prison officials] have, with deliberate indifference, exposed him to levels of [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health." 509 U.S. at 35, 113 S. Ct. 2481. The objective factor requires that the inmate show that he is incarcerated under conditions posing an "objectively substantial risk of serious harm," Marsh v. Butler County, Ala., 268 F. 3d 1014, 1028-1029 (11th Cir. 2001), one "sure or very likely to cause serious illness and needless suffering." Helling, 509 U.S. at 33, 113 S. Ct. 2480.

Though Helling does little more to define the objective risk requirement of an ambient air hazard deliberate indifference claim, decisions of the Second Circuit apply Helling to asbestos claims brought by inmates. In Crawford v. Artuz, 143 F. Supp. 2d 249 (S.D.N.Y. 2001), for example, the plaintiffs' Eighth Amendment claim failed because they suffered no present physical injury and no serious risk of future injury attributable to asbestos exposure. Id. at 259-62. In Jones v. Artuz, 2006 WL 2390267 (S.D.N.Y. 8/17/06) (unpublished), the court found no present asbestos-related injury and found that it was "extremely unlikely" that the plaintiff's limited exposure to asbestos would cause a future injury. Id. at 4-5.

It is clear that to survive summary judgment on the objective component of his deliberate indifference claim, Plaintiff must provide evidence upon which a reasonable

jury could find that he was involuntarily exposed to friable asbestos, and that such exposure harmed his present health or posed an unreasonable risk of serious damage to his future health. Defendants contend that Plaintiff fails to make such a showing:

> The undisputed evidence in this case shows that the Plaintiff is not currently suffering from any lung disease or any other asbestos-related symptom or disease. (Blanchard Affidavit, para. 11; Plaintiff's Institutional Medical Records). Furthermore, assuming that inmate Purser has not been exposed to moderate or severe levels of asbestos for a prolonged period of time (i.e., a number of years), and the fact that there is no evidence to show that inmate Purser was exposed to moderate or severe levels of asbestos for a prolonged period of time (i.e., a number of years), the likelihood that inmate Purser will develop in the future an asbestos-related lung disease is less than 1%. (Blanchard Affidavit, para. 11).

(Doc. No. 73, pp. 6-7). Conversely, Plaintiff asserts that the undisputed evidence shows that he has suffered a present injury and an increased risk of future serious injury, and that Defendants are therefore not entitled to summary judgment on the merits of his deliberate indifference claim. (Doc. No. 82, p. 6).

### 1.     Present Injury

Regarding the issue of a present injury caused by asbestos exposure, Plaintiff presents several pieces of evidence. Primarily, he points to a chest x-ray conducted by Dr. Howard P. Schiele on January 13, 2005. The results of the x-ray were that "[t]he heart is not enlarged. There are calcifications secondary to old healed granulomatous disease. The lungs are otherwise clear." (Doc. No. 60, Exh. I). Defendants have submitted the affidavit of Dr. Amy R. Blanchard, a licensed medical doctor and pulmonary disease specialist on faculty at the Medical College of Georgia. Relating to the January 13, 2005 chest x-ray, Dr. Blanchard notes that "[t]he CXR has no mention

of interstitial changes or pleural calcifications[1] or plaques, which one would expect in asbestos-related lung disease" and also defines "granuloma" as a scar left behind by an inflammation, which in Plaintiff's case could have been caused by an infection. (Doc. No. 77, Exh. M, p. 3). Dr. Blanchard concludes that "[t]here is no evidence that [Plaintiff's] granuloma was caused by exposure to asbestos." (Id.). Thus, rather than point to any present injury, the chest x-ray actually indicates that Plaintiff's lungs are "clear" and "unremarkable" and the report in no way proves that Plaintiff has a present asbestos-related injury.

Plaintiff's second submission in support of his claim is evidence of his prior complaints of what he alleges to be symptoms of asbestos exposure. He points to his own affidavit and to three health services request forms. In the health services request forms, dated between June 2 and July 9 of 2004, Plaintiff complains of fatigue, loss of appetite, weight loss, coughing up blood, dizziness, shortness of breath, vomiting, and "asbestos related symptoms." (Doc. No. 19, Attachments N, O, P). Plaintiff also asserts that he presented these same complaints to P.A. William Cheatum, and subsequently reported Cheatum's alleged inaction to the Composite State Board of Medical Examiners. (Doc. No. 83, p. 3). Plaintiff has submitted a letter from the Board acknowledging receipt of his complaint. (Doc. No. 80, Exh. N).

The evidence submitted, though proving that Plaintiff did, in fact, complain of asbestos-related symptoms, does not create any genuine issue of material fact as to the actual existence of a present injury. Plaintiff's medical records indicate that he was

---

[1] Plaintiff takes issue with Dr. Blanchard's statement that the chest x-ray did not identify any pleural calcifications. Plaintiff is advised that, in this context, Dr. Blanchard's use of the word "pleural" refers to calcifications of the "pleura," or the membrane surrounding the lungs. She does not appear to assert that Plaintiff did not exhibit "plural," or more than one, calcification of the lungs.

seen by Cheatum on June 3, 2004 for his complaints of fatigue and loss of appetite, and that lab tests were ordered. (Doc. No. 77, Exh. L, p. 21). The record indicates that Plaintiff was again seen by Cheatum on July 12, 2004 in response to his requests, that lab work was again ordered, and that Plaintiff was advised to stop smoking. (Doc. No. 77, Exh. L, p. 20). On January 13, 2005, the aforementioned chest x-ray was performed, finding the calcifications secondary to old granulomatous disease but no other remarkable lung problem. (Doc. No. 77, Exh. L, p. 56). On April 12, 2005, Plaintiff was evaluated by Dr. T. Jones for complaints of asbestos exposure. Dr. Jones found Plaintiffs lungs to be clear, but ordered that tests be performed. (Doc. No. 77, Exh. L, pp. 39, 78). On May 24, 2005, a pulmonary function test was performed at Augusta State Medical Prison, the result of which was that the "spirometry [was] within normal predicted limits." (Doc. No. 77, Exh. L, p. 75). On August 31, 2005, additional tests were requested but records indicate that Plaintiff refused them. (Doc. No. 77, Exh. L, pp. 55, 74).

Contrary to Plaintiff's assertions, the evidence he submits, along with his medical records, fails to create any genuine issue of material fact that he has a present asbestos-related injury. Though the record indicates that Plaintiff repeatedly complained of asbestos exposure and asbestos-related symptoms, there is simply no medical evidence that he actually has suffered from the symptoms or has any disease which would cause such symptoms. The tests performed all had normal results and were non-indicative of any injury or illness caused by asbestos. This fact is confirmed by the affidavit of Dr. Blanchard, wherein she finds that "[t]here is no evidence in inmate Purser's institutional medical record to indicate that he is presently suffering from any

lung disease or other asbestos-related symptom or disease. . . ." (Doc. No. 77, Exh. M, p. 4). While Plaintiff complained of shortness of breath on a few occasions, Dr. Blanchard notes that "[i]n order to be considered a potential symptom of asbestos-related lung disease, the complaints would have to be made consistently over a prolonged period of time." (Id.). Additionally, while conceding that Plaintiff's weight has been variable, Dr. Blanchard indicates that asbestosis-related weight loss "is associated with rather advanced lung disease, lung cancer or mesothelioma" and that Plaintiff's weight loss cannot be attributable to such. (Id. at 4-5).

Plaintiff offers no evidence creating a genuine issue of material fact as to these issues. Though he repeatedly contends that his diagnosis has been held to be "possible asbestosis," the reality is that he was merely evaluated by medical personnel based on his own *allegations* of possible asbestosis. See, e.g., Georgia Department of Corrections Radiology Services Request and Report, Doc. No. 77, Exh. L, p. 56 ("I/M alleges asbestos exposure"); Georgia Department of Corrections Consultation Request, Doc. No. 77, Exh. L, p. 78 ("I/M states that he has been exposed to asbestos"). Plaintiff has failed to come forth with evidence rebutting Defendants' evidence that he does not suffer from an asbestos-related injury, and thus no genuine issue of fact exists on this point.

### 2. Risk to Future Health

In support of his claim that exposure to friable asbestos at GSP creates an unreasonable risk of serious damage to his future health, Plaintiff submits his own affidavit, wherein he contends that smoking increases the risk of asbestos-related lung cancer and that his prolonged exposure to asbestos at GSP could result in illness some

AO 72A
(Rev. 8/82)

9

25 to 30 years in the future. (Doc. No. 80, Exh. L, pp. 2, 5). Plaintiff also submits portions of the Princeton University Asbestos Fact Sheet (Doc. No. 80, Exh. M), from which he gleans that the amount and duration of exposure and the smoking of cigarettes increases a persons risk of contracting an asbestos-related disease.[2]

On the issue of future harm, Defendants again submit the affidavit of Dr. Amy Blanchard, who asserts that:

> [a]ssuming that inmate Purser has not been exposed to moderate or severe levels of asbestos for a prolonged period of time (i.e., a number of years), I can state with a reasonable degree of medical certainty that the likelihood that inmate Purser will develop in the future an asbestos-related lung disease is less than 1%. I base my opinions upon his medical records as a whole, including the fact that (1) his CXR of January 13, 2005 did not show any interstitial changes or pleural calcifications or plaques, which one would expect in asbestos-related lung disease (2) his PFT of May 24, 2005 was normal and (3) his medical records did not show any chronic cough, progressive shortness of breath, or the presence of crackles on a lung exam.

(Doc. No. 77, Exh. M, p. 4). Plaintiff offers nothing to rebut this finding absent his own conclusory allegations that his future health is at risk due to his exposure. He has pointed to no objective evidence proving that he has been exposed to asbestos for any "prolonged period of time." Beyond his and another inmate's allegations, Plaintiff points to Defendants' admission that "the water pipes on L and M building hallways are insulated with insulation consisting of chrysotile, serpentine, and other hydrated mineral silicates." However, Defendants' did not admit that friable asbestos in dangerous quantities exists. (Doc. No. 60, Exh. C, p. 4). Plaintiff also points to evidence of asbestos analyses conducted in late 2005, and to evidence that GSP officials began investigating prisoners' complaints in 2004, but obviously this would not prove

---

[2] Plaintiff's medical records indicate that he has smoked 8-10 cigarettes a day for at least ten years. (Doc. No. 77, Exh. L, p. 20).

*prolonged* exposure even if it did show the presence of severe levels of airborne asbestos. (Doc. No. 60, Exh. G; Doc. No. 55, Exh. A, ¶ 10; Doc. No. 55, Exh. C, ¶¶ 3-4). Viewing the evidence as a whole, in the light most favorable to him, Plaintiff has failed to demonstrate that a genuine issue of material fact exists as to the existence of any unreasonable risk to his future health.

Plaintiff has failed to satisfy the objective component of his deliberate indifference claim, and it is consequently unnecessary to consider whether Defendants' conduct constituted deliberate indifference under the subjective factor. It is also unnecessary to address the alternative arguments of qualified immunity or supervisory liability raised by Defendants.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment be **GRANTED**.

**SO REPORTED** and **RECOMMENDED**, this 4th day of April, 2007.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE